USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 6/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EON SHEPHERD,

                Plaintiff,

v.

COMMISSIONER BRIAN FISCHER, *et al.*,

                Defendants.

No. 08-CV-9297 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

On September 5, 2017, after a five-day trial, a jury found in favor of Plaintiff Eon Shepherd, who is currently incarcerated, on his sexual assault claims against Defendants Shawn Sarles and Jason Ferrick, and in favor of correction officer Defendants Alan Twedt, Robert Bentivegna, and Robert Ercole on Plaintiff's remaining claims. The jury awarded Plaintiff one dollar in nominal damages and $20,000 in punitive damages for each liable Defendant. Before the Court are Defendants Sarles's and Ferrick's motions for judgment as a matter of law, a new trial, or a reduction in the punitive-damages award. *See* Dkt. 273. For the reasons stated below, Defendants' motions are denied.

## BACKGROUND

On September 13, 2011, Plaintiff, then proceeding *pro se*, brought a variety of Federal constitutional claims in an amended complaint pursuant to 42 U.S.C. § 1983. All of Plaintiff's claims arose from events that allegedly occurred between October 2005 and August 2008 while he was an inmate at New York State's Green Haven and Elmira Correctional Facilities. *See* Dkt. 61. Defendants were more than two dozen current and former employees of the New York State Department of Corrections and Community Supervision, on whose behalf the Attorney General of the State of New York filed a consolidated motion for summary judgment. Defendants argued that

the majority of Plaintiff's claims were precluded as a matter of law and that he had failed to properly exhaust the remainder. *See* Dkt. 109. On March 31, 2015, the Court granted in part and denied in part Defendants' motion for summary judgment. Dkt. 127. After the Court appointed counsel to represent Plaintiff, it sought additional briefing on Defendants' motion for summary judgment. Dkt. 159.[1] On February 16, 2017, the Court reconsidered its previous decision to grant summary judgment to Defendants on Shepherd's claims that he was sexually assaulted, in violation of the Eighth Amendment, and that he was denied religious meals on two Rastafarian holidays in violation of the Free Exercise Clause, and it denied summary judgment as to those two causes of action. The Court had also previously denied summary judgment for three additional causes of action: (1) that Defendant Bentivegna had been deliberately indifferent to Plaintiff's request for pain medication, in violation of the Eighth Amendment; (2) that Defendant Sarles had frisk searched Plaintiff in retaliation for filing grievances, in violation of the First Amendment; and (3) that multiple Defendants had searched Plaintiff's hair, in violation of the First Amendment because of his Rastafarian religious beliefs. *See* Feb. 2017 Op. (Dkt. 194).

On July 17, 2017, Plaintiff agreed to dismiss with prejudice his hair-search claims. Dkt. 220. On August 29, 2017, the parties proceeded to trial on the remaining four causes of action against five Defendants. On September 5, 2017, the jury found for Defendants on the retaliation, deliberate indifference, and religious-meal causes of action. Tr. Trans., Sept. 5, 2017 at 6–8 (Dkt. 272). The jury found for Plaintiff and against Defendants Sarles and Ferrick on the Eighth Amendment cause of action, specifically finding that Plaintiff had "proven by a preponderance of the credible evidence that he was sexually abused or assaulted in violation of his constitutional

---

[1] On March 25, 2016, Defendants filed a Motion for Sanctions dismissing Plaintiff's Complaint with prejudice, Dkt. 175, but subsequently withdrew that motion, Dkt. 191.

rights." *Id.* at 6–7. The jury awarded Plaintiff no compensatory damages, one dollar in nominal damages, and $20,000 in punitive damages against both Sarles and Ferrick.

On October 3, 2017, Sarles and Ferrick reiterated their motion for judgment as a matter of law—which they had first made at the close of Plaintiff's case—or a new trial, based on insufficient evidence, qualified immunity, and one of this Court's evidentiary rulings. Failing a favorable judgment or a new trial, they asked for a reduction in punitive damages. Plaintiff opposed the motion and Defendants replied. Dkts. 278, 279. For the reasons stated below, Defendants' motions are denied.

## DISCUSSION

### I. Insufficient Evidence

Defendants argue that the record did not contain sufficient evidence to allow a reasonable jury to find for Plaintiff and that the Court should either enter judgment for Defendants as a matter of law or, in the alternative, grant them a new trial. They argue that the only evidence in the record to support the verdicts are "Plaintiff's own self-serving complaints" and vague medical records. Defs. Memorandum of Law at 6 (Dkt. 274).

### A. Legal Standard

A court may only grant judgment as a matter of law if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a)(1). That standard "imposes a heavy burden on a movant," requiring "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation omitted). This Court "must draw all reasonable inferences in favor of the

3

nonmoving party, and it may not make credibility assessments or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "In short, a Rule 50 motion may be granted only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that 'a reasonable juror would have been *compelled* to accept the view of the moving party.'" *Cash*, 654 F.3d at 333 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007)).

## B. Factual Background

At trial, this Court instructed the jury that, to find for Plaintiff on his sexual abuse claims against Sarles and Ferrick, it would have to find (1) "that the [relevant] defendant sexually abused or assaulted the plaintiff," (2) "that the defendant did so intentionally or recklessly," and (3) "that the defendant's actions proximately caused injury to the plaintiff." Dkt. 227 at 24. In the instruction, the Court also advised that a "prison official's intentional contact with an inmate's genitalia or other intimate area which serves no penological interest and is undertaken with the intent to gratify the prison official's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Id.* "An inmate need not show there was penetration, physical injury or direct contact with uncovered genitalia." *Id.*

Plaintiff testified that on January 23, 2007, Defendant Sarles took a metal wand and "rammed it between [his] ass," meaning his "butt cheeks," while he was facing the wall and being searched. Tr. Trans., Aug. 29, 2017 at 76 (Dkt. 264). In addition to the physical intrusion, Plaintiff stated that Sarles, after Plaintiff asked what he was doing, said that "he should take this hand scanner and 'f' [Plaintiff] with it." *Id.* at 77. Plaintiff testified that the "ramm[ing]" caused a "sharp pain." *Id.* Furthermore, Plaintiff said that shortly afterwards when he was "crying" and telling a doctor about what Sarles had just done to him, Sarles was standing nearby and "rubbing his eyes like [Plaintiff was] a cry baby." *Id.* at 78. Plaintiff told the jury that he was crying because of the pain, and because he felt "ashamed" and "embarrassed" by the incident. *Id.* at 78–79. He also

4

testified that he never again returned to the prison facility's mental health department because Sarles was there and Plaintiff was afraid for his safety. *Id.* at 79–80.

Plaintiff further testified that on May 13, 2008, during a frisk search, Defendant Ferrick "grabbed [his genitals] like a claw . . . scooped and grabbed them . . . grabbed me hard." *Id.* at 91. Plaintiff told the jury that when he protested, Ferrick "continued to do what he was doing and then he said that he should have his—he should—him and his officer should hold [him] down so they could rape [him]." *Id.* Plaintiff described the physical pain as "sharp" and "unbearable" and said that "throbbing, nagging pain" lasted "for a while." *Id.* at 92. In a second incident in July, Plaintiff testified, Ferrick came to his cell to take him to see a visitor, but first handcuffed him, "grabbed [his] testicles," and "kept on squeezing [his] genital area" for "30 to 50 seconds." *Id.* at 94. Plaintiff also stated that Ferrick "gave [him] the credit card check," in which "he took his hands and he ran it between [Plaintiff's] butt cheek up to [his] anal hole." *Id.* at 94–95. As a result of that incident, Plaintiff testified that he was "upset," "stressed out," that he "couldn't sleep for days," and that his "body just gave out." *Id.* at 95. Plaintiff testified that "the mental feeling [was] worst of all" and that when he saw Ferrick "walk by, that is all [he would] think about." *Id.* When Plaintiff was back in his cell, he testified that Ferrick returned and "started peeking through the window[,] knocking on the window and telling [him] to turn around and . . . show him [his] private parts. He was banging on the window loud." *Id.* at 96.

Plaintiff also introduced May 15, 2008 medical records from the prison facility showing that Plaintiff had complained to medical staff of "bilateral testicular pain" from when "officers squeezed his testicles." Tr. Trans., Aug. 30, 2017 at 331 (Dkt. 266). Another inmate, Eric Tolliver, also testified that Ferrick and Plaintiff had "[o]verly aggressive" interactions and that during frisk searches of Plaintiff, Ferrick would "get up on him," "put his head over to . . . [Plaintiff's] shoulder and . . . be whispering stuff to him." *Id.* at 188. Tolliver testified that "on occasion [he would] hear

5

[Ferrick] say, like, explicit word like, you know, like sexual manner. Like, you know, he will describe his testicles and, you know, he will smile and try to, you know, degrade him like." *Id.* at 189. In addition to chronicling other comments by Ferrick about Plaintiff's testicles, Tolliver also claimed that Ferrick would, after hand-cuffing Plaintiff, use his hands to rub Plaintiff's body parts while continuing to whisper "provocative words" to him. *Id.* at 190. Ferrick, Tolliver testified, also made "degrading comments" to Plaintiff while Plaintiff was in his cell and would "talk about doing the pat-frisk, you know, when he squeezed [Plaintiff's] testicles." *Id.* at 192.

Amin Booker, another inmate, testified that he once heard Plaintiff "frantic[ly]" call for help while being searched by Ferrick because Ferrick was "grabbing him," "fondling him," and "squeezing his testicles." *Id.* at 200–01. Booker stated that he heard Plaintiff scream "ah, get off me, my balls" and then say to someone that "Ferrick was squeezing his balls." *Id.* at 201. Booker further testified that he heard Ferrick bang on the window of Plaintiff's cell and ask him to "pull it out. Let me see it. Let me see your penis." *Id.* at 202. Sarles and Ferrick denied these allegations, *see id.* at 238, 255–59, 269, 276–79, 305–06, but the jury returned a verdict for Plaintiff on the sexual assault claims against them. The jury found for Defendants on the remaining claims.

## C. Discussion

The evidence at trial was sufficient to allow a reasonable jury to return a verdict for Plaintiff on the sexual assault claims against Sarles and Ferrick. Plaintiff testified that both Sarles and Ferrick sexually assaulted him, did so intentionally, and caused him injury. According to his testimony, both Defendants initiated rough, unwanted physical contact with and in Plaintiff's private parts, and also made unambiguous threats to "f" or "rape" him, causing physical pain and mental anguish. Specifically as to Ferrick, the testimony of Tolliver and Brooks, as well as the medical records, lent support to Plaintiff's allegations against him, and the jury chose to believe

6

Plaintiff. The testimony and medical records provided far more than the "sheer surmise and conjecture" that would render a verdict impermissible.

As to the verdict against Sarles, Defendants argue that the single incident of Sarles ramming his scanner between Plaintiff's butt cheeks cannot establish sexual assault liability. While Defendants acknowledge that a "rough sexual pat frisk" may be held to violate the Eighth Amendment, they aver that Sarles's conduct—"a brief incident of physical contact over clothing with a hand scanner"—may not. Defs. Reply Memorandum at 5 (Dkt. 279). Defendants cite a case from the Eastern District of New York in which the court dismissed a sexual abuse claim alleging that a corrections officer had put his hand between the plaintiff's buttocks and then removed his fingers and told the plaintiff that he smelled sweet. *Perez v. Ponte*, 236 F. Supp. 3d 590, 618 (E.D.N.Y. Feb. 14, 2017). That case is inapposite here. As the court explained in *Perez*, the abuse claim there failed because plaintiff did not even allege "any facts indicating that [the officer] intended to humiliate Plaintiff or otherwise derived sexual arousal or gratification from the search itself," nor did plaintiff allege that the physical intrusion "was undertaken for the express purpose of sexually abusing" him. *Id.* Here, in contrast, Plaintiff testified that the unwarranted intrusion into his private parts was accompanied by an explicit threat of rape, and was followed by mocking as Plaintiff sought help. The contact here was also more forceful—by Plaintiff's account, causing a sharp pain and lingering psychological effects.

Defendants also argue that pursuant to the Second Circuit's decision in *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), this Court may not consider the comments or motive of Sarles unless and until it determines that his physical contact with Plaintiff, in and of itself, was sufficiently serious to permit Eighth Amendment liability. But *Crawford* sets no such rule. In that case, the Circuit reaffirmed "that a single act of sexual abuse may violate the Eighth Amendment if . . . it is entirely gratuitous and devoid of penological purpose." *Id.* at 256. The Circuit evaluated

7

the search at issue there as a whole and explicitly considered "[the defendant's] stated reason for initiating the frisk." *Id.* at 259. Specifically, in finding that the defendant's intent for the search was either "to arouse himself, humiliate [the plaintiff], or both," the *Crawford* court considered the defendant's "demeaning comments" as evidence that the search violated the Constitution. *Id.* at 259. Comments by a defendant during an interaction thus constitute relevant evidence. Here, if Sarles had made an innocuous comment to Plaintiff after probing his butt cheeks with a wand, the physical intrusion may have taken on an entirely different character. Instead, Plaintiff testified that Sarles threatened to rape him. There was thus sufficient evidence that this "single incident of sexual abuse" served no penological purpose, was undertaken "with the intent to gratify the officer's sexual desire or humiliate the inmate," and therefore violated the Eighth Amendment. *Id.* at 257.

To the extent that Defendants sought to argue that Sarles's conduct met only the subjective prong of Eighth Amendment liability and not the objective one, *see Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992), that argument likewise fails. When evaluating the objective prong, courts holistically consider the nature of a defendant's conduct—they do not divorce the physical and verbal components of the conduct. *See, e.g., Crawford*, 796 F.3d at 257–58; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("The core judicial inquiry, we held [in *Hudson*], was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." (internal quotations omitted)). As this Court noted in its summary-judgment ruling, Sarles's search, as alleged by Plaintiff and now credited by the jury, constituted "a harm that objectively violates the Eighth Amendment." Feb. 2017 Op. at 39. Thus, Defendants are not entitled to judgment as a matter of law.

Nor are they entitled to a new trial. To grant a new trial pursuant to Rule 59 because the verdict was against the weight of the evidence, a court must find that a jury "has reached a seriously

8

erroneous result or . . . the verdict is a miscarriage of justice." *Farrior v. Waterford Bd. Of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (internal quotation omitted). In deciding whether to grant a new trial, the trial court may weigh the evidence itself and "need not view it in the light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998). Though a trial court may consider the credibility of witnesses, the credibility determinations of a jury "are entitled to deference" and when the resolution of issues depends on an assessment of witness credibility, "it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Id.* at 104–05 (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

Given the facts of this this case, liability could not be determined without an assessment of the credibility of the relevant witnesses. As discussed, then, inherent in the jury's verdict was a determination that it credited Plaintiff's account as to these interactions, likely in addition to those of Tolliver and Booker, who corroborated Plaintiff's testimony. Ordering a new trial would thus be contrary to the deference due to the jury's credibility assessments. In any event, a verdict for Plaintiff on these claims was simply not so lacking in foundation as to be a miscarriage of justice. Defendants' motion for a new trial based on the weight of the evidence is thus denied.

## II. Qualified Immunity

As noted above, this Court already denied qualified immunity to Sarles and Ferrick on the sexual abuse claims in its decision denying summary judgment. In that ruling, the Court evaluated Plaintiff's allegations that: (1) on January 23, 2007, Sarles conducted a pat frisk "in a rough sexual manner using a hand scanner pushing it between [Plaintiff's] buttock cheeks roughly saying he was going to fuck [Plaintiff] in [his] ass with said scanner," Feb. 2017 Op. at 38–39 (internal quotation omitted); (2) on May 13, 2008, "[w]hile [Plaintiff] was handcuffed, Ferrick allegedly squeezed and grabbed his genitals while making sexual comments"; (3) on June 10, 2008, Ferrick told Plaintiff that he would squeeze his testicles harder the next time because he knew Plaintiff

9

liked it; (4) on July 31, 2008, Ferrick "again squeezed [Plaintiff's] testicles hard and roughly ran his hands between [Plaintiff's] buttocks cheeks to [his] ass hole applying pressure for several seconds during a pat risk," *id.* at 41 (internal quotation omitted); and (5) on July 31, 2008, several hours after the previous incident, "Ferrick banged on the window of his cell telling [Plaintiff] to pull [his] boxers down so he can see [Plaintiff's] dick because he knows [he has] a big dick, he felt it," *id.* (internal quotation omitted).

On the basis of those allegations, the Court initially granted summary judgment on Plaintiff's sexual abuse claims against Sarles and Ferrick, but later reconsidered that decision, ultimately denying summary judgment on the claims. The Court discussed the relevant precedent, finding that the conduct alleged was not among the class of "reasonable mistakes" that qualified immunity was intended to protect. *Id.* at 42 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)); *see id.* at 41–49 (discussing qualified immunity in depth). The Court noted that, in *Crawford*, the Second Circuit affirmed that its previous decision in *Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997), had "recognized that a single act of sexual abuse may violate the Eighth Amendment if . . . it is entirely gratuitous and devoid of penological purpose." 796 F.3d at 256. "Under *Boddie*, no amount of gratuitous or sexually-motivated fondling of an inmate's genitals—even if limited in duration or conducted through the inmate's clothes, as was the case here—is permitted by the Constitution." *Id.* at 258. For these and other reasons, the Court found that no officer of reasonable competence would conclude that the conduct in question was lawful, *see Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009), and that Sarles and Ferrick "had fair notice at the time of the conduct alleged that such conduct violates the Eighth Amendment." *See* Feb. 2017 Op. at 41–49.

Defendants contend that the Court should revisit this issue because the evidence presented at trial was less serious than the alleged facts that formed the basis of the summary-judgment

10

ruling. The Court disagrees. With respect to Sarles's conduct, the mere fact that Plaintiff did not use the phrase "rough sexual pat frisk" in his trial testimony does not create any meaningful distinction between his testimony and his summary-judgment allegations. A reasonable juror plainly could have interpreted the conduct Plaintiff described at trial as being a rough sexual pat frisk. As for the conduct of Ferrick, Defendants contend that, at trial, Plaintiff "left behind his allegations of a prolonged pat frisk" as well as his allegations of fondling and prolonged pressure to his anus. Dkt. 274 at 13. They also claim that Plaintiff's testimony of Ferrick's performance of a "credit card check" was a "fresh addition" to his allegations. *Id.* Not so. First, Plaintiff testified that Ferrick squeezed his testicles for 30 to 50 seconds, which the jury could have found was "prolonged." Second, even if Plaintiff did not use the word "fondling" at trial, "fondling" versus "grabb[ing]" or "scoop[ing]" or "squeezing" genitals for 30 to 50 seconds is too thin a distinction to be sustained. Third, Plaintiff did allege a "credit card check" by Ferrick during summary judgment when he claimed that Ferrick "roughly ran his hands between [his] buttocks cheeks to [his] ass hole applying pressure for several seconds." Feb. 2017 Op. at 40–41. Plaintiff does not appear to have specifically testified at trial that pressure was applied for several seconds, but that omission does not materially alter the allegations. Given that the conduct alleged at summary judgment was not meaningfully distinct from the conduct testified to during trial, the Court declines to revisit its previous ruling pursuant to the law of the case doctrine. *See DiLaura v. Power Auth. of N.Y.*, 982 F. 2d 73, 76 (2d Cir. 1992) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation omitted)).

Even if the Court were inclined to revisit its denial of qualified immunity, however, Defendants have provided no basis for a different conclusion. *Boddie* held that a "single incident" of sexual assault could be sufficiently "severe" to violate the Eighth Amendment, and that

11

"repetitive" sexual abuse could also violate it. 105 F.3d at 861. While the *Boddie* court found that the "isolated episodes of harassment and touching" there were not serious enough to violate the Constitution, *id.*, this Court concluded that the alleged conduct here was "far more serious, threatening, and more repetitive," Feb. 2017 Op. at 45. Given its more intrusive nature and the explicit threat of rape, even Sarles's single instance of assault was more severe than the conduct in *Boddie*—and sufficiently severe to notify every reasonable officer that it violated the Eighth Amendment. None of the various district court cases that Defendants cite—all but one of which had already been decided when the Court issued its summary-judgment ruling—convince the Court otherwise. And the conduct at issue in the one intervening district court opinion, *Shannon v. Venettozzi*, No. 13-CV-4530 (KBF), 2017 WL 1944122, at *2 (S.D.N.Y. May 9, 2017), was similarly less serious and threatening than the conduct here. In particular, there appears to have been no threat of rape. *Id.*

Nor does the intervening summary order from the appeal of the *Crawford* remand convince the Court to reverse the denial of qualified immunity. *See* 2018 WL 542578, at *2 (S.D.N.Y. Jan. 25, 2018). That order clarified that, despite *Crawford*'s language that *Boddie*'s standard remained unchanged, plaintiffs "do not have the benefit of the [*Crawford*] decision" for qualified immunity purposes when alleging conduct that occurred before the decision. *Id.* Even if that order were binding on this Court, it would not provide a basis for immunity. First, while this Court discussed *Crawford* in its denial of qualified immunity, the Court's decision was based squarely on *Boddie*'s clearly established legal standard as originally stated. Second, the conduct here was more severe than that in *Crawford*, which the summary order described as "quite similar" to that in *Boddie*. *Id.* For example, while the defendant in *Crawford* allegedly threatened to "run [his] hands up the crack of [plaintiff's] ass," 796 F.3d at 255, here Plaintiff testified that Defendant Ferrick actually did so. And this case stands apart from *Boddie*, *Crawford*, and many others in light of Plaintiff's testimony

that both Defendants, during their sexual assaults, explicitly threatened to "f" or rape him. Based on *Boddie*, every reasonable official would have understood that such conduct had no legitimate penological purpose and violated Plaintiff's Eighth Amendment rights. Defendants' motion for judgment as a matter of law on the basis of qualified immunity is thus denied.

## III.    Evidentiary Ruling on Prior Allegations

Just prior to and during trial, this Court granted Plaintiff's motion *in limine* to exclude the details of other allegations by Plaintiff of similar conduct by other corrections officers at other facilities. The Court recognized that the issue was "a very close question," but given the absence of a finding that the other allegations were untrue, it concluded that the "very acute risk of unfair prejudice" substantially outweighed any probative value. Tr. Trans., Aug. 29, 2017 at 14–19, 51– 52. The Court did, however, permit Plaintiff to be asked whether it was true that Defendants were not the only officers he had "ever alleged to sexually abuse you and threaten you during pat-frisks." Tr. Trans., Aug. 30, 2017 at 183. Plaintiff answered, "Correct," *id.*, and Defendants' counsel highlighted both the question and answer in summation, *see* Tr. Trans., Aug. 31, 2017 at 459–60 (Dkt. 268).

Defendants argue that the Court should revisit this issue and grant a new trial because excluding the evidence of other lawsuits tainted the trial and prevented Defendants "from presenting their most compelling defense: that [Plaintiff] is a serial liar who relies on fill-in-the-blank complaints to lash out at corrections officers for perceived slights." Defs. Memorandum of Law at 16. Defendants urge that they wanted the jury to learn about the lawsuits not to show Plaintiff's litigiousness, but to highlight "the virtually identical allegations underlying" his various allegations. *Id.* at 17. Only with this information, Defendants contend, could a jury fairly assess Plaintiff's credibility. As discussed above, a court should not grant a new trial pursuant to Rule 59 unless it is convinced that the jury "reached a seriously erroneous result or . . . the verdict is a

13

miscarriage of justice." *Farrior*, 277 F.3d at 634 (internal quotation omitted). An evidentiary error is thus not grounds for a new trial unless the error affected a party's substantial rights. *See Farganis v. Town of Montgomery*, No. 06-CV-5238 (GAY), 2010 WL 1781000, at *1 (S.D.N.Y. Apr. 29, 2010); Fed. R. Civ. P. 61.

The Court affirms its prior ruling. Defendants were given sufficient opportunity to challenge Plaintiff's credibility by highlighting his past sexual abuse allegations. Indeed, the Court allowed Defendants to elicit from Plaintiff on cross-examination the fact that he had alleged that other officers had sexually abused him during pat-frisks, and Defendants' counsel emphasized this fact during summation. Accordingly, the jury heard evidence that Plaintiff had alleged that at least four corrections officers—in at least two different facilities—had sexually abused him during a pat-frisk. At trial, the jury found two of the three officers alleged to have sexually assaulted Plaintiff liable. The jury thus credited Plaintiff's accounts as to Sarles and Ferrick despite having direct knowledge of another sexual assault allegation—against corrections officer Alan Twedt at the Elmira Correctional Facility—that it did not similarly credit. In addition, the jury heard that those officers were "not the only Corrections officers [Plaintiff] ever alleged to sexually abuse [him]." Tr. Trans., Aug. 30, 2017 at 183; Tr. Trans. Aug 31, 2017 at 459. And while Plaintiff's other allegations were similar in nature to those here, they were not so duplicative or vague as to be boilerplate. And if the allegations did go to the issue of Plaintiff's credibility rather than merely his propensity for litigation, *see Tomaino v. O'Brien*, 315 Fed. App'x 359 (2d Cir. 2009), the Court remains convinced that the risk of unfair prejudice was too great in the context of this case. Defendants' motion for a new trial is thus denied.

## IV. Punitive Damages

Defendants also ask that the Court reduce the amount of punitive damages awarded. The Court declines to do so.

14

### A. Legal Standard

"Although a jury has wide discretion, a district court may refuse to uphold a punitive damage award when the amount is so high as to shock the judicial conscience and constitute a denial of justice." *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (internal quotation omitted). Three "guideposts" assist courts in evaluating whether a punitive damages award is excessive: "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* at 809 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

### B. Discussion

Within the first guidepost of reprehensibility—"[p]erhaps the most important indicium of the reasonableness of a punitive damages award," *Gore*, 517 U.S. at 575—three potential aggravating factors are: "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee*, 101 F.3d at 809. Here, according to Plaintiff's testimony, Sarles's conduct was violent in nature, involved a threat of serious sexual violence, and was accompanied by comments suggesting that he was acting maliciously. Ferrick's alleged conduct likewise involved all three factors: Plaintiff testified that Ferrick grabbed his testicles and threatened him with rape, Ferrick's comments reflected malicious intent, and he made unwanted contact with Plaintiff's genitals and anus several times, and another time demanded that Plaintiff show him his "private parts." Defendants contest that their actions were malicious, and argue that there was no evidence regarding what motivated the officers. But their precise motivations need not have been known for the jury to determine that

15

they acted out of intentional malice rather than accident or negligence. In sum, the jury had sufficient evidence to conclude that the conduct of both officers was thoroughly reprehensible.

Because the jury awarded no compensatory damages, the ratio of punitive damages to nominal damages is 20,000:1. That ratio is obviously far higher than the 500:1 ratio that the Supreme Court characterized as "breathtaking" in *Gore*. 517 U.S. at 583. But the Second Circuit has found that "in a § 1983 case in which the compensatory damages are nominal, a much higher ratio can be contemplated while maintaining normal respiration." *Lee*, 101 F.3d at 811. Indeed, in such cases, the use of the ratio multiplier "is not the best tool." *Id.*; *see Gore*, 517 U.S. at 583 (noting that the Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula"). The Court is thus not troubled by the high numerical ratio in this case.

Finally, the Court's review of punitive damages in other cases does not give it pause as to the award here. Defendants cite the Second Circuit's decision in *Provost v. City of Newburgh*, 262 F.3d 146, 164 (2d Cir. 2001), in arguing that an award of $10,000 "approaches the limits" permissible for conduct equal to or worse than that of Sarles and Ferrick. The conduct the jury concluded Sarles and Ferrick engaged in, however, was significantly worse than that in *Provost*. There, a jury found that a defendant police officer had retaliated against the plaintiff for his exercise of free speech by falsely arresting him. The extent of any violence was a "rough" escort down a hallway and verbal abuse. *Id.* at 152. That conduct does not approach the level of reprehensibility of the actual and threatened violence of sexual assault and threats of rape—by each Defendant—that the jury determined occurred in this case. Moreover, in Defendants' other cited case, *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001), the court awarded $7,500 in punitive damages, but did not find the defendant liable for excessive force, let alone sexual assault. In sum, an award of $20,000 to punish Defendants for sexually assaulting Plaintiff,

16

and to deter such behavior in the future, does not shock the conscience. Defendants' motion to reduce the award is thus denied.

## CONCLUSION

For the reasons stated above, Defendants' motions are denied. The Clerk of Court is respectfully directed to terminate docket entry 273.

SO ORDERED.

Dated: June 26, 2018
New York, New York

_____
Ronnie Abrams
United States District Judge